**UNITED STATES of America,**

v.

**Ernest WRAY.**

**No. CR 97–0356(JMF).**

United States District Court, District of Columbia.

Sept. 15, 1997.

Michael Lennon, U.S. Atty.'s Office, Washington, DC, for U.S.

Tony Miles, Federal Public Defender's Office, Washington, DC, for Ernest Wray.

## MEMORANDUM IN EXPLANATION OF DETENTION DETERMINATION

FACCIOLA, United States Magistrate Judge.

This matter comes before me upon the application of the United States that the defendant be detained pending trial. After a hearing, the government's motion was granted, and this memorandum is submitted to comply with the statutory obligation that "the judicial officer shall include written findings of fact and a written statement of the reasons for the detention." 18 U.S.C. § 3142(i)(1).

### FINDINGS OF FACT

1. An indictment has been returned charging the defendant with possession of a firearm by a felon (18 U.S.C. § 922(g)(1)) and possession of ammunition by a felon (18 U.S.C. § 922(g)(1)). While executing a search warrant, a firearm was found in the closet of the defendant's home and ammunition for it was found in his pocket.

2. As will be discussed more thoroughly below, defendant has previously been convicted of a felony.

---

1. However, the issue is the subject of debate in this and other District Courts. *Compare United States v. Gloster,* 969 F.Supp. 92 (D.D.C. 1997) (Friedman, J.) *and United States v. Washington,*

## REASONS FOR DETENTION

An examination of the factors required to be considered by 18 U.S.C. section 3142(g) compels the conclusion that there is clear and convincing evidence that defendant's release on any condition or combination of conditions will not reasonably assure the safety of the community and his detention is therefore appropriate.

**The nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug.** The Chief Judge has concluded by written order that possession of a firearm by a felon is a violent offense under the Bail Reform Act which justifies a detention hearing. See 18 U.S.C. 3142(f)(1)(A).[1]

**Defendant's character, physical and mental condition, family ties, employment, financial resources, and length of residence in the community.** Defendant claims to have lived in the District of Columbia for his entire life and is the father of 4 children and says that he lives with them. He was not employed when he was arrested but has worked at a car dealership on an occasional, as needed basis.

**The weight of the evidence.** It appears that the government's case is a strong one. The gun was found in the defendant's home, and there is no claim that it belonged to his wife. Moreover, ammunition for the gun was found in his pocket.

**Whether on parole at the time of the present offense and the defendant's prior criminal record.** Consideration of this factor weighs so heavily in favor of detention that it overwhelms all other factors. Defendant has a violent criminal history and has committed new crimes while on parole for old ones.

More specifically, a pre-sentencing investigation report prepared for the United States District Court in Maryland in 1988 discusses defendant's criminal history to that point in his life and discloses the facts of each of the defendant's convictions. Defendant's crimi-

907 F.Supp. 476 (D.D.C.1995) (Hogan, J.); *United States v. Anderson,* Crim. No.97–329 (D.D.C. September 5, 1997) (Kollar–Kotelly, J.).

nal history began in 1971 with a carrying a pistol without a license ("CPWL") conviction for which the defendant received a 2 to 6 year Federal Youth Corrections Act sentence in Superior Court. He had a revolver near the scene of an armed robbery. He was released on parole on July 27, 1973, and rearrested within a year. Those charges were dropped, but his adjustment to parole supervision was considered fair to poor. Most significantly, while on parole, he was rearrested for kidnaping and then for bank robbery. On September 1, 1974, he was sentenced to 5 to 30 years in the Superior Court for the District of Columbia for kidnaping and to one year for CPWL. Together with two other men, the defendant kidnaped a woman at gun point. She was beaten, tied up and put in a closet until she escaped. On October 4, 1974 the defendant was sentenced to 10 years in the United States District Court in Maryland for bank larceny. He and two cohorts robbed a bank at gun point. The sentence in the Superior Court was made consecutive to the federal sentence, except for the CPWL sentence which was made concurrent.

Additionally, on August 22, 1975, the defendant received a 2 to 6 year sentence for assault with a dangerous weapon. The report indicates that the defendant shot his victim twice. Defendant claimed that he took an "Alford" plea.

Defendant was still on parole in 1987 when his wife summoned police to their home in Prince George's county.[2] Ultimately, the police found an arsenal in this home. They found a loaded handgun, a loaded revolver, an unloaded automatic pistol, a stolen shotgun, two sawed off shotguns, two other revolvers, a Beretta handgun, three ammunition magazines, four bulletproof vests, a gas mask, and holsters for some of these weapons. Possession of these weapons then lead to the defendant's pleading guilty to possession of a firearm by a felony in the United States District Court in Maryland, the case which yielded the pre-sentencing investigation report referred to herein.

Finally, the defendant was convicted of prison breach in the Superior Court of the District sentence to 5 to 30 years from the Superior Court in 1975, was on parole on that sentence when he committed the instant offense. That means, of course, that the defendant was on parole for the violent offense of kidnaping while armed when he committed the instant crime of possession of a firearm by a felon, just as he was on parole for the violent offense of bank larceny when he last committed the identical crime of possession of a firearm by a felon in 1987.

Defendant's criminal history and his committing crimes while on parole compel his detention. A major focus of the reform the Ball Reform Act attempted was to make explicit the consideration of dangerousness in order to deal with those defendants who committed new offenses while on supervision for old ones. S.Rept. No. 98–225, 98th Cong. 1st Session, (1983) reprinted as Appendix II to J. Weinberg, *Federal Bail and Detention Handbook* (1996), *passim.* Defendant is an archetype of the kind of defendant to which Congress pointed. While on parole for one violent offense he possessed several firearms. Then, while on parole for another violent offense, he possessed another firearm. Clearly, the contempt the defendant showed for the conditions of his parole and his arming himself in violation of those conditions renders it highly unlikely that he would comply with the conditions to be imposed if he were released, including the central condition that he commit no new offense while on release. That display of contempt compels the conclusion that only his detention can eliminate the risk that he will once again endanger this community by once again arming himself while on conditional release. He is most certainly dangerous in that sense.

## CONCLUSION

Therefore, a weighing of all the pertinent facts compels the conclusion that the defendant should be detained pending trial.

---

**2.** Note that the defendant told the pre-sentencing investigation writer that he lived in the District of Columbia all of his life. In 1987, however, he said that his home was in Maryland.